**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

KIMBERLY HORTON                                      CIVIL ACTION

VERSUS

G4S SECURE SOLUTIONS (USA), INC.,                    16-544-SDD-EWD
AND JOHN DOES 1-20

<u>**RULING**</u>

Before the Court is a *Motion for Summary Judgment* filed on behalf of the
Defendant, G4S Secure Solutions (USA), Inc.[1]  Plaintiff, Kimberly Horton, has filed an
*Opposition.*[2]  The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331.  Oral argument
is unnecessary.  For the following reasons, the *Motion* shall be granted.[3]

## I.     FACTUAL AND PROCEDURAL BACKGROUND[4]

Kimberly Horton ("Plaintiff" or "Horton") brings this gender discrimination lawsuit
against her former employer, G4S Secure Solutions (USA), Inc. ("Defendant" or "G4S").
G4S is a contract security company that provides security professionals to customers in
various industries.  Horton began working for G4S in April of 2007 as a Security Officer.
Less than one month later, Horton was promoted to Area Supervisor of G4S' Baton Rouge
office.  By October of 2007, Horton was promoted to Operations Manager of G4S' Baton

---

[1] Doc. 48.
[2] Doc. 55.
[3] Doc. 48.
[4] The Court notes that the Defendant offered forty-seven (47) "Statement[s] of Undisputed Fact" with its
*Motion for Summary Judgment.*  Doc. 48-6, pp. 5-12.  In response, Plaintiff offers ten (10) "Disputed Facts."
Doc. 55, pp. 3-4.  Pursuant to Local Civil Rule 56(b), "[a]ll material facts set forth in the statement required
to be served on the moving party will be deemed admitted, for purposes of the motion [for summary
judgment], unless controverted as required by this Rule."  Therefore, to the extent that Defendant's
undisputed facts are indeed facts and not legal or conclusory arguments, and, furthermore, are not disputed
by the Plaintiff, they shall be deemed admitted.

Rouge office. Overhead employees, such as Horton, work out of the G4S office, whereas billable employees, such as Project Managers, work directly at the client sites.

In 2013, G4S discontinued annual merit increases company-wide due to budget concerns, and began giving only cost of living increases to salaried employees.[5] Horton repeatedly mentioned to Chris Beck ("Beck"), then General Manager of the Baton Rouge office, that she needed a raise.[6] In 2013, Beck reposted Horton's position in order to increase her salary.[7] As a result, Horton's salary was increased by $10,797.11 for an annual salary of $51,000.00.[8]

In late 2015, Ray Cox ("Cox") replaced Beck as the General Manager of G4S' Baton Rouge office. Horton disagreed with Cox's operational style, including his training methodology, reduction of staff to meet budget goals, and the reassignment of some of Plaintiff's duties to Leigh Redman ("Redman"), the Manager of Human Resources Administration in the Baton Rouge office.[9] Despite this, however, Horton agreed that under Cox's leadership, there was a reduction in turnover, and she believed the company's profits increased.[10] During this time period, Horton and Redman quarreled with each other because Horton felt that Redman "was overreaching, [and] making poor decisions" that affected Horton's overhead staff.[11]

Horton also expressed her displeasure about the billable Project Managers at BASF, a chemical plant, and Our Lady of the Lake Hospital ("OLOL") earning slightly

---

[5] Doc. 48-1, pp. 52-53.
[6] Doc. 48-1, pp. 52-53.
[7] Doc. 48-1, p. 53.
[8] Doc. 48-1, p. 53.
[9] Doc. 48-1, pp. 59-60. Redman is a female who worked for G4S as a Project Manager before becoming the Manager of Human Resources in the G4S Baton Rouge office.
[10] Doc. 48-1, pp. 60-61.
[11] Doc. 48-1, p. 56.

higher salaries than she did as an overhead Operations Manager.[12]  Horton's salary, unlike the Project Managers' salaries, was paid out of the company's overhead budget.[13] Project Managers' salaries were contractually determined and billed to G4S' clients.[14] During her employment at G4S, Horton never applied for a Project Manager position.[15]

In December of 2015, Horton told Cox that she was going to resign, but agreed to stay with the company a little bit longer to see if she could work out her differences with Cox and Redman.[16]  Horton, feeling as though none of her complaints had been resolved, actually resigned on January 22, 2016.[17]  In her resignation letter to Cox, Horton stated that her last day of employment would be April 29, 2016.[18]  In an email dated February 8, 2016, Cox notified Chad Starwalt, Senior Vice President of the Southern Region of G4S, of Horton's resignation.[19]  Although Cox sent the email, he expressed to Horton that "he was hop[ing] that [she] would change her mind" and not resign.[20]  During this interim period, it was suggested to Horton that she apply for Account Manager or Project Manager positions that were either open or coming open at BASF or OLOL.[21]  She was also asked to consider transferring to the G4S office in New Orleans to work as the Operations Manager.[22]  Horton did not pursue any of these other positions.[23]  On March 28, 2016, Horton submitted her final letter of resignation.[24]  She continued working at G4S

---

[12] Doc. 48-1, pp. 57 and 68.
[13] Doc. 48-1, p. 58.
[14] Doc. 48-1, pp. 58 and 68.
[15] Doc. 48-1, p. 41.
[16] Doc. 48-1, p. 64.
[17] Doc. 48-3, pp. 7-9.
[18] Doc. 48-1, pp. 57 and 64; Doc. 48-3, pp. 7-9.
[19] Doc. 48-1, p. 65; Doc. 48-3, p. 10.
[20] Doc. 48-1, p. 65.
[21] Doc. 48-1, p. 23.
[22] Doc. 48-1, p. 23.
[23] Doc. 48-1, p. 23.
[24] Doc. 48-1, p. 66; Doc. 48-3, pp. 11-12.

until April 29, 2016 in order to obtain her vacation pay and to train her replacement, Steve Dennis, who was paid $50,000.00 per year, which was $4,121.61 less than Horton's final salary.[25]

On June 16, 2016, Horton filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting discrimination on the basis of sex.[26] On August 17, 2016, Horton filed the instant lawsuit against her former employer seeking to recover actual and punitive damages for alleged wage discrimination based upon her gender in violation of Title VII and the Equal Pay Act ("EPA").[27] She also asserted a state law claim of constructive discharge.[28] The next day, Horton filed an Amended Charge of Discrimination with the EEOC asserting discrimination based upon sex and equal pay from May 22, 2014 until April 29, 2016.[29] On April 4, 2017, the EEOC issued its Notice of Right to Sue letter.[30] Thereafter, on June 16, 2016, Horton filed an *Amended Complaint*.[31]

Defendant now moves for summary judgment on all of Plaintiff's claims. G4S contends that Horton cannot establish a *prima facie* case of Title VII gender discrimination because she suffered no adverse employment action, and she cannot demonstrate that any similarly-situated male was treated more favorably than she was treated. Even if Plaintiff could establish a *prima facie* case, G4S asserts that it has a legitimate non-discriminatory business reason for Horton's salary, and Horton cannot prove that its proffered reason was merely pretextual. Similarly, G4S contends that Horton cannot

---

[25] Doc. 48-1, p. 66; Doc. 48-1, p. 143.
[26] Doc. 40, pp. 11-12.
[27] Doc. 1.
[28] Doc. 1.
[29] Doc. 40, pp. 9-10
[30] Doc. 40, pp. 7-8.
[31] Doc. 40.

establish a *prima facie* case under the Equal Pay Act because she cannot establish that G4S paid "workers of one sex more than workers of the opposite sex for equal work."[32] And, even if Horton could satisfy her *prima facie* case, G4S argues that any differential pay is due to its contracts with its customers.

In response, Horton contends that she can satisfy her *prima facie* case in support of her Title VII and EPA claims. As for her Title VII claim, Horton argues that she experienced an adverse employment action by being paid at a lower rate than male employees who had significantly fewer duties and responsibilities than she had, and that she has demonstrated that similarly-situated male employees were treated more favorably than she was treated. She further asserts that any proffered justification for her pay disparity was pretextual. As for her EPA claim, Horton contends that she can demonstrate that similarly-situated male employees were paid more than she was for fewer or lesser job responsibilities, duties, and supervisory obligations.

## II.   LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33] "An issue is material if its resolution could affect the outcome of the action."[34] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the

---

[32] Doc. 48-6, p. 14.
[33] FED. R. CIV. P. 56(A).
[34] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005)(quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)).

evidence."[35]  "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[36]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[37]  However, the non-moving party's "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[38]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[39]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[40]  However, "[t]he court has no duty to search the record for material fact issues.  Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[41]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff

---

[35] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[36] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986))).

[37] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

[38] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

[39] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[40] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[41] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[42]

### B. State Law Constructive Discharge Claim

Defendant asserts that Horton's independent constructive discharge claim must fail for the same reasons that her constructive discharge may not serve as an adverse employment action to support her *prima facie* case of gender discrimination in compensation claim. Because Horton only needs to show that she was a member of a protected class and that she was paid less than a nonmember for work requiring substantially the same responsibility in order to satisfy her *prima facie* case of gender discrimination in compensation claim, G4S' constructive discharge argument does not defeat her Title VII claim.[43] In other words, whether Horton voluntarily resigned or was constructively discharged has no bearing on whether she can establish her *prima facie* case for a Title VII disparate pay claim. Nonetheless, G4S' analysis and argument is still applicable to the viability of Horton's independent state law constructive discharge claim, which the Court shall now consider.

Horton does not dispute the fact that she resigned from her position at G4S on April 29, 2016. In fact, the record clearly establishes that, on no less than three occasions, Horton expressed her intention to resign either verbally or in writing. Horton has alleged, however, that she would not have resigned from her Operations Manager position "but for the fact that she was discriminated against because of her gender, evidenced through Defendant's actions in paying her significantly less than her male

---

[42] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

[43] *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522-23 (5th Cir. 2008). *See also Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984).

counterparts and refusing to adhere to its promises to increase her pay."[44]  It is essentially Horton's position that she was constructively discharged because she was paid less than her male co-workers.  In response, G4S contends that Horton cannot show that she was constructively discharged.

A resignation is only actionable under Title VII and Louisiana's employment discrimination laws if the resignation qualifies as a constructive discharge.[45]  "The resigning employee bears the burden to prove constructive discharge."[46]  Establishing constructive discharge "imposes a high burden"[47] on the employee to "establish that [her] working conditions were so intolerable that a reasonable employee would feel compelled to resign."[48]  Importantly, "[d]iscrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge."[49]

In considering whether a reasonable employee would have felt compelled to resign, courts within the Fifth Circuit consider the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].[50]

---

[44] Doc. 40, p. 3.

[45] Louisiana courts consistently turn to federal precedent for guidance when considering claims of constructive discharge.  *See Plummer v. Marriott Corp.*, 94-2025 (La. App. 4 Cir. 4/26/95); 654 So.2d 843, 848 (cited with approval by *King v. Phelps Dunbar, L.L.P.*, 98-1805 (La. 1999); 743 So.2d 181, 193).

[46] *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005)(quoting *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004)).

[47] *Robinson v. Waste Mgmt. of Tex.*, 122 Fed.Appx. 756, 758 (5th Cir. 2004).

[48] *Id.* quoting *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997).

[49] *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).

[50] *Keelan*, 407 F.3d at 342 (quoting *Haley*, 391 F.3d at 649-50 (citation omitted)(alterations in original)(footnote omitted)).

The test that an employee must meet is "an objective, 'reasonable employee' test: whether a reasonable person in the plaintiff's shoes would have felt compelled to resign."[51]  To prevail on a constructive discharge claim, a plaintiff must demonstrate a greater amount of harassment than that required for a hostile work environment claim.[52]  Furthermore, while unlawful discrimination in the form of unequal pay is relevant to determine whether a constructive discharge has occurred, "a difference in pay alone cannot constitute such an aggravated situation that a reasonable employee would be forced to resign."[53]

The Court finds that Horton has failed to offer any evidentiary support to create a material fact issue on whether she was constructively discharged.  Horton simply argues that "G4S took adverse employment action against [her] and treated [her] less favorably than similarly situated male employees by paying [her] at a lower rate than male employees who had significantly fewer duties than [her] and who had fewer responsibilities than [her]."[54]  As previously stated, however, Horton's reliance on a difference in pay alone "cannot constitute such an aggravated situation that a reasonable employee would be forced to resign."[55]  Moreover, a review of the undisputed facts shows that Horton was never demoted and her pay was never reduced.  The record does not evince badgering or harassment by Horton's supervisors calculated to encourage Horton to resign.   In fact, the record shows that Cox, Horton's supervisor at the time of her

---

[51] *Id.* (citing *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 n. 19 (5th Cir. 1994)).
[52] *Brown*, 237 F.3d at 566.
[53] *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1077 (5th Cir. 1981).
[54] Doc. 55, p. 5.
[55] *Pittman*, 644 F.2d at 1077.

resignation, actually hoped that she would change her mind and remain an employee of G4S in some capacity.

Accordingly, the Court finds that Horton's voluntary resignation does not rise to the level of a constructive discharge. Therefore, G4S is entitled to summary judgment, and Horton's state law constructive discharge claim shall be dismissed.

### C. Title VII Gender Discrimination in Compensation Claims

G4S moves for summary judgment on Horton's Title VII gender discrimination in compensation claim. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[56] Because there is no direct evidence of discrimination in this case, the Court will assess Horton's discrimination claim under the *McDonnell Douglas Corp. v. Green* burden-shifting framework.[57] Under this burden-shifting framework, the plaintiff must first establish a *prima facie* case of discrimination in compensation by showing "that [s]he was a member of a protected class and that [s]he was paid less than a non-member for work requiring substantially the same responsibility."[58] If the plaintiff makes her *prima facie* showing, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the pay disparity.[59] If the defendant satisfies its burden of production, then the burden shifts back to the plaintiff—who bears the ultimate burden of persuasion of proving

---

[56] 42 U.S.C. §2000e-2(a)(1).
[57] *McDonnell Douglas Corp. v. Green*, 93 S.Ct. 1817, 1824 (1973); *see also Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).
[58] *Taylor*, 554 F.3d at 522 (citing *Uviedo*, 738 F.2d at 1431).
[59] *Id.* at 522 (citing *Ross v. Univ. of Tex. at San Antonio*, 139 F.3d 521, 525 (5th Cir. 1998)(concerning age discrimination)).

discrimination—to raise a genuine issue of material fact that the defendant's proffered non-discriminatory reason is pretext for discrimination.[60]

For the purposes of her *prima facie* case, G4S concedes that Horton is a member of a protected class.[61] However, G4S argues that Horton cannot demonstrate that any other similarly-situated male employee was treated more favorably than she was treated.

A plaintiff asserting disparate treatment in compensation under Title VII must show that her "circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class."[62] Although the Fifth Circuit has made clear that "nearly identical" is "not synonymous with 'identical[,]'"[63] courts within this circuit have defined "'similarly situated' narrowly."[64] "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor [,] or had their employment status determined by the same person[.]"[65] "Employees with different supervisors, who work for different divisions of a company . . . generally will not be deemed similarly situated."[66] The Fifth Circuit has further explained, that "employees who have different work responsibilities . . . are not similarly situated."[67]

G4S argues that the only proper comparator to Horton was Preston Jones ("Jones"). Jones, a male, was the only other G4S Operations Manager in Louisiana. G4S

---

[60] *Nasti v. CIBA Speciality Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007)(citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)).

[61] Doc. 48-6, p. 9. G4S' concession was also limited to this *Motion* only.

[62] *Taylor*, 554 F.3d at 523 (quoting *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

[63] *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012)(quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).

[64] *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F.Supp.2d 581, 593 (S.D. Tex. 2012). *See also Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 856-57 (S.D. Tex. 2010).

[65] *Turner*, 675 F.3d at 893 (quoting *Lee*, 574 F.3d at 260).

[66] *Lee*, 574 F.3d at 259 (citing *Wyvill v. United Cos. Life Ins.*, 212 F.3d 296, 302 (5th Cir. 2000)).

[67] *Id.* at 259-60 (citing *Smith v. Wal-Mart Stores* (No. 471), 891 F.2d 1177, 1180 (5th Cir. 1990)).

further argues that its Project Managers at BASF and OLOL were both male and female, and did not have the same job responsibilities as Horton; therefore, Project Managers are not proper comparators to Horton.

In her *Opposition*, Horton fails to address why Jones, the only other Operations Manager in Louisiana at the time of her resignation, is not a proper comparator.[68]  Jones, who was located in the G4S New Orleans office, was also under Cox's supervision.[69]  It is undisputed that Horton made $9,867.46 more than Jones.[70]  Horton testified she was paid more because she had "more officers and more [client] accounts."[71]  Importantly, Horton does not offer any evidence showing that her job responsibilities were any different than those of her fellow Operations Manager.  Accordingly, the Court finds that Jones is the proper comparator to Horton.  Because the undisputed evidence shows that Horton earned a higher salary than Jones, she cannot demonstrate that a similarly-situated male employee was treated more favorably than she was treated.  Therefore, Horton cannot establish her *prima facie* case of Title VII gender discrimination in compensation claim.

The Court further finds that, even if Jones were not a proper comparator, Horton has failed to demonstrate how male Project Managers are proper comparators for the following reasons.

First, the Court finds that the undisputed evidence shows that at least two women, Redman and Ginamarie Lakatos, held positions as Project Managers at BASF while Horton was employed at G4S, and that they earned more money than Horton.[72]

---

[68] Doc. 48-1, p. 142.
[69] Doc. 48-1, p. 142; Doc. 48-4, p. 6.  At the time Horton worked for G4S, the Baton Rouge and New Orleans' offices were both operating.
[70] Doc. 48-1, p. 9.
[71] Doc. 48-1, p. 34.
[72] Doc. 48-1, pp. 71-72.

Considering the fact that female Project Managers also made more money than Horton, the Court finds that Horton is unable to show that G4S Project Managers are proper comparators.

Horton also contends that she was paid less than the following three male Project Managers: Markeith Johnson ("Johnson"); William H. Hineman ("Hineman"); and Carl W. Lott, Sr ("Lott"). Of these three individuals, the Court finds that only two were Project Managers: Johnson and Hineman. During her deposition, Horton admitted that Lott was a flex officer.[73] Therefore, because Lott was not a Project Manager, he is not a proper comparator to Horton.

Turning to the record evidence, both Johnson and Hineman earned more money per hour than Horton, and they reported to the same supervisor as Horton.[74] It is also undisputed that Horton "had more employees under her[,] over which she had supervisory capacity[,] than any single Project Manager during her tenure."[75] Nonetheless, Horton has failed to identify or set forth any evidence that shows how her job responsibilities and those of the Project Managers were similar in nature. Instead, Horton repeatedly asserts that, although she "had more responsibilities than Project Managers, male Project Managers during her tenure were paid more than [she was paid]."[76] However, conclusory argument without more will not carry Horton's burden on summary judgment. Additionally, Horton's own admission that the Project Manager position was "totally

---

[73] Doc. 48-1, p. 57. Lott's Pay History spreadsheet also identifies his employment title as "Custom Protection Officer." Doc. 55-7, p. 2.

[74] Horton provided evidence showing that her hourly rate was only $20.27. (Doc. 55-4). The evidence also shows that Markeith Johnson's hourly rate was $26.46 (salary was $55,000.00) (Doc. 48-1, p. 143; Doc. 55-5) and that William H. Hineman's hourly rate was $23.05 (Doc. 55-6). Doc. 48-4, p. 8.

[75] Doc. 48-5, p. 8.

[76] Doc. 55, pp. 3 and 6. The Court notes that the evidence cited by Plaintiff to support this position amounts to legal conclusions or does not demonstrate how Horton's job involved the same responsibilities as that of a Project Manager.

different" from the Operations Manager position supports a finding that the Project Managers are not proper comparators.[77]   This is further buttressed by Redman's testimony explaining that the duties of the Project Manager and Operations Manager are "different, the pressure is different, and the requirements are different."[78]   Based on the foregoing, the Court finds that the male Project Managers identified by Horton are also not proper comparators.

Accordingly, the Court finds that Horton has failed to establish a *prima facie* case of discrimination in compensation because she has not shown that her circumstances were nearly identical to those of a better-paid employee who is not a member of her protected class.   Therefore, Horton's Title VII gender discrimination in compensation claim shall be dismissed.

### D.  Equal Pay Act ("EPA") Claim

The EPA prohibits employers from discriminating "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."[79]   To establish a *prima facie* case under the EPA, Horton must show: "(1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort [,] and responsibility under similar working conditions; and (3) that she was paid less than members of the

---

[77] Doc. 48-1, p. 24.
[78] Doc. 48-5, p. 8.
[79] 29 U.S.C. § 206(d)(1).

opposite sex."[80]  Horton need not show that her job duties were identical to those of higher paid male employees, only that the "skill, effort and responsibility" required in the performance of the compared jobs are "substantially equal."[81]  If Horton makes out a *prima facie* case, then the burden shifts to G4S to demonstrate that the differential is justified under one of the EPA's four enumerated exceptions: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based upon any factors other than sex.[82]

Like her Title VII gender discrimination in compensation claim, Horton is unable to satisfy her *prima facie* case under the EPA because she has failed to offer an appropriate male comparator who was paid a higher salary for engaging in equal work.  As this Court previously found, Horton's proper male comparator is Jones.  Because Jones earned a lesser salary while holding the same job position as Horton—that of Operations Manager—Horton's *prima facie* case falls short.  Even if Jones were not a proper comparator, for those reasons previously stated in relation to her Title VII claim, Horton has failed to provide any evidence that shows how the skill, effort, and responsibilities of the G4S Project Managers and the Operations Managers were substantially equal. Hence, the G4S Project Managers are also not proper comparators for the purpose of Horton's EPA claim.   Because Horton is unable to satisfy her *prima facie* case under the EPA, G4S is entitled to summary judgment and Horton's claim shall be dismissed.

---

[80] *Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir. 1986); *see also Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)).

[81] *Wallace v. Bd. of Sup'rs for the Univ. of Louisiana Sys.*, Civil Action No. 14-657, 2016 WL 7116107, (M.D.La. Dec. 6, 2016)(quoting *Jones*, 793 F.2d at 722-23 (citation omitted)).

[82] *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 723 (5th Cir. 2011); 29 U.S.C. § 206(d).

## III.   CONCLUSION

For the foregoing reasons, the Court hereby grants the *Motion for Summary Judgment* filed on behalf of the Defendant, G4S Secure Solutions (USA), Inc.[83]  *Judgment* shall be entered accordingly.

Signed in Baton Rouge, Louisiana on <u>April 27, 2018</u>.


_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[83] Doc. 48.